[No. 1688.]

John Schindler v. The State.

1. Practice — Jeopardy — Discharge of the Jury.— The. law vests in the trial judge a discretion, under certain circumstances, to discharge a jury even in a felony case, without the consent of the defendant, and the exercise of such discretion will not be revised by this court, and will not be held to constitute jeopardy, except where it is made clearly to appear that such discretion has been abused. See the opinion *in extenso* on the question, and note circumstances under which the court properly sustained exceptions to a plea of former jeopardy.

2. Same — Circumstantial Evidence — Charge of the Court.— When the State relies alone upon circumstantial evidence for a conviction, it is the imperative duty of the court to give in charge to the jury the law controlling such evidence.

3. Theft — Evidence — Idem Sonans.— "Franz Masoh," the name of the owner of the property stolen, as alleged in the indictment, and "Frank Mozach," the name of such owner as shown by the evidence, are not *idem sonans*. Such proof will not sustain the allegation of ownership as it is set out in the indictment.

Appeal from the District Court of Fayette. Tried below before the Hon. L. W. Moore.

The conviction in this case was for the theft of two cows and two calves, the property of Franz Masoh, in Fayette county, Texas, on the 18th day of June, 1883. A term of two years in the penitentiary was assessed against the appellant as his punishment.

When the cause was called for trial, on the 17th day of November, 1884, the defendant filed the following plea of former jeopardy and former acquittal:

"The State of Texas }
        v.         }
John Schindler. }

"And now comes the defendant in the above entitled and numbered cause, and for special plea in this cause pleads former jeopardy, and says that heretofore, to wit, on the 23d day of May, A. D. 1884, he was tried in the district court of Fayette county, in which county the indictment is now pending, upon this indictment and charge, and was, in said court, on said day, acquitted of the accusation herein charged against him, by a jury in the following manner, to wit: This cause being called on the said 23d day of May, 1884, the State and defendant both announced ready for trial; a jury of twelve men, legally qualified, was elected, sworn and impaneled to try the cause; and after hearing the evidence, argument of counsel and charge of the court, they retired to consider of their

verdict. Failing to agree upon their verdict said jury was, on the evening of the 23d day of May, 1884, discharged by the court from further consideration of the same; that when they were so discharged, the defendant was not in the court room, but was in county jail of Fayette county, Texas, and knew nothing of the discharge of the jury, and did not consent to their discharge. Whereupon, premises considered, this defendant pleads former jeopardy and acquittal, and of this plea prays judgment." Subscribed and sworn to, etc.

The State's exceptions to the plea, 1, because insufficient in law, and if true no defense to this prosecution, and, 2, because one of the defendant's counsel was present and consented to the discharge of the jury, were sustained by the court, and this action of the court below is the subject-matter of the first head-note of this report.

Frank Mozach was the first witness for the State. He testified that he lived in Fayette county, Texas, about six miles from the town of Schulenburg. He lost three milch cows and calves on the night of June 18, 1883. He turned those cows in the pen that night, and the calves in the pasture, and was of opinion that they were taken therefrom between 9 and 10 o'clock. He missed them early on the morning of June 19, 1883. He collected several of his neighbors forthwith, and tracked these animals to a point in a lane where one of the cows forced a fence and got into the pasture of Mr. Joseph Tobala, where she was found. The tracks of more than one horse were found following or driving the cows in the lane. The party resumed the pursuit of the remaining two cows, and followed their tracks to a branch, where the tracks of the horses became distinct and fresh again. Here, too, the indications showed the presence of more than one horse. The witness and his party found the two cows and calves at Marion Smith's on the third day after they were stolen. The animals found at the said Smith's were the identical cattle lost by the witness. These cattle were taken from the possession of the witness without his knowledge or consent, in said Fayette county, Texas. Witness lived about seventeen miles from the house of the said Smith, and about fourteen miles from the house of the defendant.

Cross-examined, the witness stated that he went to bed on the night of the theft between 9 and 10 o'clock, and did not know whether the cattle were taken before or after he retired. He missed them early next morning, and followed and found them in Smith's pasture, in the manner stated. He saw no one take them, nor did he at any time see any one in possession of them.

Joseph Tobala testified that he remembered the time that his neighbor Mozach lost three milch cows, and he was one of the party who went in pursuit on the morning of June 19, 1883. One of these cows was found in his, witness's, pasture. Witness saw the place where she forced the fence in getting into the pasture, and, on the soft ground at that point, saw the tracks of two horses which followed the cow in the courses she described in making her escape. The other two cows were found in Marion Smith's pasture.

Bill Morgan testified, for the State, that about 8 o'clock on the morning of June 19, 1883, he saw the defendant and Frank Scallorn about four miles beyond Marion Smith's place. They were together, and were riding in the direction of Smith's. They had no cows with them at that time.

James Kimbrough testified, for the State, that on the morning of June 19, 1883, he saw the defendant and another man driving two cows and calves in the direction of Marion Smith's. They were then about three and a half miles distant from Smith's house. Witness at that time knew neither of the parties.

Ben McNatt testified, for the State, that on the morning of June 19, 1883, he saw the defendant and a young man whose name he has since learned to be Frank Scallorn, on the La Grange and Flatonia road. They were driving two cows and calves. Witness rode with these two men a distance of about two miles, and while with them asked one of them, he does not remember which, if they were buying cattle. He answered in the affirmative, and witness asked what they paid for the animals they were driving. He replied that they paid $35 apiece, though the cows were aged. Witness stopped on the road for a short time, but soon overtook the defendant and his companion, Scallorn. They were still driving the cows and calves, and had almost reached Smith's house. As the witness left them near Smith's, he told them that if they would go with him to Mr. Jones's, where he, witness, had cattle, he would sell to them. They replied that they would go to Jones's that evening. It was not later than 9 o'clock when the witness saw the defendant and Scallorn with the cattle at Smith's house. They put the cattle in Smith's pen, and went into Smith's yard, towards Smith's house. Witness could not remember which of the two men did the talking, but, so far as he could see, one had about as much to do with the cattle as the other. Here the State rested.

The State admitted, by her prosecuting attorney, that at a pre-

vious term of the court, Frank Scallorn pleaded guilty to the theft of the same cattle concerned in this prosecution.

Marion Smith testified, for the State (?), that he was not at home on the morning of June 19, 1883. He passed his house, however, about 10 o'clock on that morning and saw the cows described in the indictment in his pen. He returned to his home about 1 o'clock that evening, and found the cows still in the pen. He saw no person with the cows on either occasion. Later in the evening Frank Scallorn came to witness's house, sold witness the cattle by bill of sale, and received $50 from the witness for the same.

Cross-examined, the witness stated that he was constable of the precinct in which his house was situated, and had been for two years. He and Frank Scallorn were cousins. Soon after the purchase of these cattle, the witness heard that they were stolen animals. On the day following the purchase, the witness went to Frank Scallorn and demanded the return of the purchase money. Scallorn paid it back in part, and the witness returned him the bill of sale. Witness did not see the defendant at his house with the cattle at any time. It is about ten miles from the house of the witness to that of the defendant, and about fourteen to that of Mozach, and the intervening country is thickly settled.

Mrs. Mary Schindler, the wife of the defendant, testified in his behalf that, about sunrise on the morning of June 19, 1883, Frank Scallorn came to her house to see the defendant. After talking with her husband (the defendant) a short time, the two rode off together. Witness could neither speak nor understand the English language, and did not know the subject of conversation between the defendant and Scallorn. Defendant returned home about 1 o'clock on that day. He, defendant, was at home the whole of the night of June 18, 1883, and left for the first time when he went off with Scallorn, as stated. Witness did not know Scallorn, nor did she know his name until told by her husband on his return. Defendant was arrested at home about four nights after the occurrences the witness deposed to.

Randolph Caldwell, the defendant's half brother, testified that, at the time of the alleged theft, he was living with the defendant. Early one morning a man, whose name the witness has since learned to be Frank Scallorn, came to defendant's house, went in, and talked to the defendant for a short time. In a few minutes the defendant and the man Scallorn rode off together. Defendant returned after dinner on the same day. Witness had never before seen Frank Scallorn.

Tobala and McCauley, testifying for the State, in rebuttal, stated that they had lived in the neighborhood, the one twenty-four and the other thirty-one years, and knew that the defendant Frank Scallorn and the witness Randolph Caldwell were well acquainted with each other. They were raised together in the same neighborhood.

The motion for new trial raised the questions discussed in the opinion except that embraced in the last head-note, denounced the organization of the jury, complained of the charge as given and of the action of the court in refusing those asked, and impugned the verdict as unsupported both by the law and the evidence.

*Phelps & Haidusek* filed an able brief for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

Willson, Judge. I. Exceptions to defendant's plea of former jeopardy were properly sustained. It was not shown by the facts alleged in said plea that the jury, on the former trial, were improperly discharged by the court. True, the jury were discharged on the same day that the cause was submitted to them, but, for aught that appears from the plea, it may have been after they had been kept together for such time as to render it altogether improbable they could agree; or it might have been because of some urgent necessity, such as the serious illness of one or more of the jurors, etc.

The law vests in the trial judge a discretion, under certain circumstances, to discharge a jury even in a felony case, without the consent of the defendant, and the exercise of such discretion will not be revised by this court, and will not be held to constitute jeopardy, except when it is made clearly to appear that such discretion has been abused. This subject was very fully discussed in the case of *Powell* v. *The State*, decided at the last Austin term of this court (*ante*, p. 345), and it is therefore unnecessary that we should, in this opinion, reiterate the conclusions then arrived at. In that case it was made manifest to this court, by the record, that in discharging the jury on a former trial the court had abused its discretion, and the defendant's plea of jeopardy was therefore sustained. In this case the plea fails to allege facts which show legal jeopardy, and hence the court did not err in sustaining the exceptions to it.

II. The evidence relied upon by the State to sustain this conviction, being wholly circumstantial, it was the imperative duty of the court to instruct the jury in relation to this character of evidence. This the court failed to do, and in so failing committed an error

which must reverse the judgment. (*Faulkner v. The State*, 15 Texas Ct. App., 115; *Garcia* v. *The State*, Id., 120.)

III. With a view to another trial, we will call attention to a matter apparent of record which, however, has not been directly presented by counsel for defendant in his brief. In the indictment the cattle charged to have been stolen are alleged to be the property of *Franz Masoh*, while the evidence shows the name of the owner to be *Frank Mozach*. These names are not *idem sonans*, and the proof, therefore, does not sustain the allegation of ownership. On another trial this variance may perhaps be obviated.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

[Opinion delivered January 14, 1885.]